UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FRANCES PIERRE,
                Plaintiff,

    -against-                                    MEMORANDUM
                                                        OPINION & ORDER
JPMORGAN CHASE BANK,                      05 Civ. 1297 (GBD )

                Defendant.
------------------------------------------------------------------x
GEORGE B. DANIELS, DISTRICT JUDGE:

      Plaintiff brought this suit against defendant alleging defamation as well as race and gender discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq*, and New York Human Rights Law. Defendant moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56(c). Defendant's motion for summary judgment is granted.

## BACKGROUND

      Plaintiff, an African-American female, began working for Chemical Bank, a predecessor of JP Morgan Chase Bank ("JPMC"), in 1986. From 1986 to 1999, plaintiff was promoted from the position of Call Center Quality Assurance Job Coach to the positions of Service Manager, Select Banking Manager, Sales Manager, and Assistant Mega Branch Manager at the defendant company. In all of those positions, plaintiff received either competent or positive performance reviews. Plaintiff alleges that beginning in 2001, her manager engaged in a series of actions that displayed a preferential treatment of white males. Specifically, plaintiff claims that her manager ordered her to give up her Branch Manager workstation in favor of others, took away her essential staff, and made offensive gestures towards other African-American managers. Plaintiff further alleges that her manager did not behave this way towards white managers, but, rather

referred to them as "country boy club members"—which plaintiff understood to mean white males.  Pl.'s Mem. Opp'n. Summ. J., 3.

In her position as Branch Manager at East Hills, plaintiff dealt with a small business client named Northern Deals beginning in 2002.  Northern Deals complained to plaintiff more than once over a six-month period about excessive maintenance fees, and threatened to close their accounts.  Plaintiff states that in order to keep Northern Deals as a customer, she authorized reversals and waivers of cash transaction fees charged to Northern Deals.  Despite plaintiff's authorization, defendant's automated system often failed to successfully reverse or waive such fees.  As a result, plaintiff authorized the use of a Miscellaneous Credit Form for Northern Deals to record cash deposits, allowing them to circumvent the fees normally charged for such services.  Plaintiff alleges that she gave such authorization at the suggestion of the service manager whom plaintiff oversaw.  Defendant maintains that it is not appropriate under JPMC policy to use Miscellaneous Credit Forms to process cash deposits to client accounts.  Defendant further maintains that plaintiff should have sought authorization from her supervisors before approving repeated usage of a Miscellaneous Credit Form to avoid or refund fees to Northern Deals.

In February 2003, plaintiff transferred to the position of Multisite Small Business Relationship Manager ("SBRM").  Plaintiff alleges that she transferred to this position because she was instructed that such a move was the only way she could attain her next corporate promotion to Vice-President.  Plaintiff was told the promotion was not available to her in her role as Branch Manager–despite her successor, a white female, later receiving that very promotion.  In this new role, plaintiff was responsible for small business banking customers with accounts housed at the East Hills and Greenvale branches in Long Island.  In June 2003, the Assistant

Branch Manager/Service Manager at East Hills asked plaintiff's replacement Branch Manager if she should continue processing Northern Deals cash deposits as miscellaneous credits, as plaintiff had instructed. Per the new Branch Manager's instructions, on June 23, 2003, the Assistant Branch Manager sent an email to plaintiff inquiring about special circumstances relating to this client and asking how the account should be handled going forward. Plaintiff responded on June 26, 2003, instructing that the client associates should continue processing the Northern Deals cash deposits as they had been doing. The new Branch Manager, a white female, then approved the continuation of fee reversals for Northern Deals.

On November 13, 2003, the Northern Deals client came into the branch and attempted to instruct a teller on what internal code to use to process his cash deposit. When the new Branch Manager was alerted to the situation, she pulled up the account details and saw that Northern Deals had been making multiple deposits at different branch locations. She informed the client that JPMC would no longer process deposits in that way, and then referred the matter to JPMC's Fraud Prevention & Investigation Department.

During its investigation, the Fraud Prevention & Investigation Department found that over the course of one year, approximately $1.2 million were deposited in Northern Deals account and that 182 deposits totaling over $900,000 were posted as miscellaneous credits. The investigator discussed these findings with JPMC Human Resources and Small Business Financial Services ("SBFS") Management and provided them with a copy of the Final Investigation Report. SBFS Management made an independent assessment of whether plaintiff's conduct warranted termination. They concluded that in her role as Branch Manager, plaintiff violated JPMC policy by instructing staff to process cash deposits by recording them as miscellaneous

3

credit memoranda, and violated the Bank Secrecy Act by not filing timely Currency Transaction Reports for such deposits. SBFS management recommended plaintiff be terminated on these grounds. Plaintiff's employment was terminated effective January 21, 2004.

Plaintiff claims that according to JPMC policy, the SBRM must obtain approval from the Branch Manager for any fee waiver over $100. Thus, plaintiff maintains that her replacement as Branch Manager, not plaintiff, had the final authority to approve the fee reversals on Northern Deals' account after June of 2003. Plaintiff additionally points out that the Greenvale Branch also processed cash transactions via credit memoranda, though its white female branch manager was never investigated nor terminated.

Plaintiff alleges that although she complained to her senior managers, nothing was done to alleviate the disparate treatment. Upon her termination, plaintiff contacted Human Resources, but was told it was "too late" to complain. Pl.'s Mem. Opp'n. Summ. J., 11.

Plaintiff filed her lawsuit on February 3, 2005, in the District Court for the Southern District of New York. Plaintiff alleges defamation resulting from a false Form U-5 stating that plaintiff violated Bank Secrecy Act regulations, unlawful discriminatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000, *et seq.*, and applicable New York State anti-discrimination laws.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The burden is on the moving party to demonstrate that the evidence fails to present a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986). When deciding a motion for summary judgment, the court views all evidence most favorably to the non-moving party and draws all reasonable inferences in favor of that party. See Schneider v. Feinberg, 345 F.3d 135, 144 (2d Cir. 2003).

## DEFAMATION CLAIM

Plaintiff alleges defamation resulting from defendant's filing a Form U-5 containing false information. All securities dealers who are members of the National Association of Securities Dealers ("NASD") must file a Form U-5 when a registered agent leaves the firm. The Form U-5 in dispute states that plaintiff was terminated because she "neglected to complete a cash transaction report for a large deposit into a bank account and used credit slip in lieu of a deposit slip." Def.'s Mem. Supp. Summ. J., 10. Defendant maintains that plaintiff's claim is not viable as a matter of law because an employer's statements on NASD Form U-5 are subject to an absolute privilege. The Second Circuit has held that under New York law, all statements made by an employer on a Form U-5 form are, in fact, subject to absolute privilege. Rosenberg v. Metlife, Inc., 493 F.3d 290. Accordingly, defendant's statements on plaintiff's Form U-5 are not actionable since they are privileged as a matter of law. Defendant's motion to dismiss the defamation claim is granted.

## TITLE VII CLAIM

Plaintiff alleges discrimination on the basis of race and gender. Title VII of the Civil Rights Act forbids an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race,

color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).  Title VII cases are governed by a burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See, e.g., Farias v. Instructional Sys. Inc., 259 F.3d 91, 98 (2d Cir. 2001). See also Janneh v. Endvest, Inc., 64 Fed. Appx. 814, 815 (2d Cir. 2003). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas Corp., 411 U.S. at 802-04.  In order to sustain a prima facie case of discrimination, plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position and was performing her duties satisfactorily; (3) she suffered an adverse employment decision or action; and, (4) the decision or action occurred under circumstances giving rise to an inference of discrimination.  Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005);  Norville v. Staten Island Univ. Hosp. 196 F.3d 89, 95 (2d Cir. 1999).

  If plaintiff establishes a prima facie discrimination claim, the defendant then bears the burden of articulating a legitimate non-discriminatory reason for the adverse employment action that the plaintiff suffered.  See id., 411 U.S. at 802-04.  If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the employer's proffered reason is mere pretext, and that discrimination was the true motivation for the adverse employment action. See id., 411 U.S. at 802-04.

  Plaintiff has failed to meet her burden of establishing a prima facie Title VII claim of gender discrimination, because she has not provided any evidence regarding disparate treatment based on sex to satisfy the fourth element of the McDonnell Douglas test.  Plaintiff fails to reveal any causal connection between the adverse employment action and plaintiff's gender.  In fact, many of the similarly situated branch managers plaintiff claims received disparate treatment,

because they were not fired, are female.  Plaintiff alleges that there is circumstantial evidence supporting her claim, as she was terminated for a practice that was also condoned by her successor Branch Manager at East Hills, a white female replacement, who was not reprimanded. Because plaintiff's successor was also female, this fails to support plaintiff's claim of gender discrimination.  Moreover, plaintiff has failed to show that she and any replacement were similarly situated in all material respects to support an inference of gender or racial discrimination.  See Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).[1]

Even if plaintiff's claim of preferential treatment on the job for white males were able to meet her burden of establishing a prima facie case of racial discrimination, defendant has provided sufficient evidence demonstrating a legitimate non-discriminatory reason for the adverse employment action that the plaintiff suffered.  See McDonnell Douglas Corp., 411 U.S. at 802-04.  Plaintiff was found to have circumvented the reporting requirement in violation of the Bank Secrecy Act, and failed to consult with her manager prior to taking such actions.  Plaintiff has not provided any evidence indicating that defendant's non-discriminatory reason for the adverse employment action was merely pretextual.  Even if an employer's decision to terminate an employee may be unreasonable or wrong, it can not alone be a valid basis from which to conclude that the reason is pretextual.  DeMarco v. Holy Cross High Sch., 4 F.3d 166, 170-171 (2d Cir. 1993).  This court therefore grants summary judgment in favor of defendant on plaintiff's discrimination claims.

---

[1] Plaintiff also failed to exhaust her administrative remedies with regard to her gender based claim as she made no claim of sex discrimination in her filed EEOC complaint.

## STATE AND LOCAL LAW CLAIMS

Because plaintiff's federal claims fail in their entirety, this Court declines to exercise supplemental jurisdiction over plaintiff's non-federal claims. See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.").[2]

## CONCLUSION

Defendant's motion for summary judgment is granted. This case is dismissed.

Dated: New York, New York
       August 6, 2008

SO ORDERED:

GEORGE B. DANIELS
United States District Judge

---

[2] In any event, under state law plaintiff's discrimination claim would suffer from the same insufficiencies as her federal discrimination claims.